UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

MARK A. LAGUNA,

        Petitioner,

        v.                               Case No. 10-C-0609

JIM SCHWOCHERT,

        Respondent.

---

DECISION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Mark A. Laguna shot and killed his wife. He initially pled not guilty and not guilty by reason of mental disease or defect, but he dropped the latter plea before trial. An Iron County, Wisconsin, Circuit Court jury convicted Laguna of one count of second-degree intentional homicide. In September 2006, Laguna was sentenced to twenty-five years of initial confinement and ten years of extended supervision. He pursues a petition under 28 U.S.C. § 2254, asserting that the conviction and sentence were imposed in violation of the Constitution. At the time he filed his petition Laguna was confined at Dodge Correctional Institution, which is located within this district. (*See* Doc. 1, ¶ 8; Doc. 10, ¶ 2.)

FACTUAL AND PROCEDURAL BACKGROUND

In 2004, Laguna was diagnosed with a major depressive disorder. (Doc. 11, Ex. Q at 204, 207.) He received in-patient treatment in November 2004 and was prescribed an antidepressant known as a selective serotonin reuptake inhibitor. (*Id.* at 203-04; *see id.* at 213-14.) The hospital doctor did not diagnose bipolar disorder at that time. (*See id.* at 207-10.) Shortly after discharge, Laguna went to a local clinic because he had been unable to sleep for days at a time. A nurse practitioner prescribed an additional drug,

though she did not consult with Laguna's psychiatrist about it. Laguna killed his wife in March 2005.

Selective serotonin reuptake inhibitors were re-evaluated by the FDA in 2004 or 2005. (*See* Doc. 11, Ex. Q at 214-15, Ex. S at 577-78.) As a result, the FDA issued a warning indicating a potential for side effects of psychotic behaviors, mood swings or violence. (Doc. 11, Ex. Q at 215, Ex. S at 577-78.)

Upon the advice of trial counsel Laguna entered a plea of not guilty by reason of involuntary intoxication and not guilty by reason of insanity or mental disease or defect ("NGI"). *See* Wis. Stat. § 971.15. Wisconsin maintains a bifurcated trial procedure for NGI pleas. *See* Wis. Stat. § 971.165. When a defendant pleads not guilty and NGI, the issues of guilt and legal responsibility are presented separately to the jury; the first stage of the procedure is a trial to determine guilt, and the second stage is to determine the NGI issue. *See* Wis. Stat. § 971.165(1).

Prior to trial, Laguna dropped his NGI plea. Apparently, counsel believed that caselaw regarding Wisconsin's bifurcated procedure in NGI cases prevented his introduction of psychiatric evidence regarding mental illness in the guilt phase. As Laguna puts it here, defense counsel thought Laguna had to choose between his involuntary intoxication defense and his NGI defense and advised Laguna accordingly. With the dropping of the NGI plea, Laguna proceeded to a one-stage trial, solely on guilt.

At trial, Laguna's treating jail psychiatrist testified that at the time Laguna killed his wife he was actually bipolar, though the disorder had not been diagnosed at the time of the killing. (Doc. 11 Ex. S at 573, 578.) The jail psychiatrist and the psychiatrist who treated Laguna when he was hospitalized testified that the drugs Laguna had been prescribed for

2

depression were not appropriate for someone with bipolar disorder and created an increased risk of a manic episode or psychotic state. The drugs could seriously exacerbate the symptoms of mental illness and lead to psychotic behavior. (Doc. 11 Ex. Q at 125, Ex. S at 567-78, 582.)

During deliberations the jury asked: "[I]f Mark is found not guilty, what assurances are there that the public and Mark will not be at risk of harm in the future? Is there a possibility of mental health incarceration?" (Doc. 12 Ex. T at 784.) The court responded that it was unable to answer the question and that the effect of any verdict was for the court to determine. (Doc. 12 Ex. T at 787.)

On appeal Laguna raised the issue of ineffective assistance of counsel and a request for a new trial in the interest of justice under state law. (*See* Doc. 10 Exs. C, E.) The Wisconsin Court of Appeals affirmed Laguna's conviction in a decision issued March 17, 2009, and the Wisconsin Supreme Court denied review on July 17, 2009. Respondent admits that Laguna had exhausted his state remedies. (Doc. 21 at 3 n.3.)

In his federal habeas petition Laguna initially presented two grounds for relief. First, he alleged that trial counsel was ineffective regarding dropping the NGI defense. According to Laguna, counsel incorrectly believed that Laguna could not pursue a defense of involuntary intoxication and a defense of mental disease or defect, causing Laguna to drop the latter. Second, Laguna contended that he was denied due process because Wisconsin's bifurcated trial procedure for the NGI plea deprived him of the opportunity to present a complete defense.

However, the brief Laguna filed in support of his petition makes no reference to the claim of ineffective assistance of counsel. Thus, he abandoned the claim. This court finds

3

Laguna's ineffective assistance of counsel claim waived and will not address it further. *See Clay v. Holy Cross Hosp.*, 253 F.3d 1000, 1002 (7th Cir. 2001).

Together with the due process claim, Laguna argues in his brief a new "issue[] for consideration": That a categorical rule prohibiting introduction of evidence regarding medications that may cause profound mental illness or mental defects is not in the "interest of justice." (Doc. 17 at 4.)

DISCUSSION

A petition seeking a writ of habeas corpus may not be granted as to any claim that was adjudicated on the merits in state court unless the decision on that claim was contrary to or involved an unreasonable application of clearly established U.S. Supreme Court law or was based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceeding. 28 U.S.C. § 2254(d). A state-court decision is contrary to Supreme Court law if it is opposite to a conclusion reached by the Supreme Court on a question of law or if the state court decided the case differently than the Supreme Court on facts that are materially indistinguishable. *Williams v. Taylor*, 529 U.S. 362, 405-06, 413 (2000). A state-court decision is an unreasonable application of Supreme Court law if it identifies the correct governing legal principle but applies that principle to the facts of the case unreasonably. *Id.* at 407-09, 413. Further, a state court's fact determinations are presumed correct and a petitioner must rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). "If this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 562 U.S. \_\_\_, \_\_\_, 131 S. Ct. 770, 786-87 (2011).

4

The relevant state court decision is that of the last state court to review the issues. *Lucas v. Montgomery*, 583 F.3d 1028, 1030 (7th Cir. 2009). Here, the Wisconsin Court of Appeals addressed Laguna's issues on appeal, but the Wisconsin Supreme Court did not; the latter court simply denied review without opinion. (*See* Doc. 10 Exs. F, I.)

Laguna raised only the ineffective assistance of counsel claim and a state-law interest-of-justice claim on direct appeal to the Wisconsin Court of Appeals. (Doc. 10 Ex. C.) Although Laguna mentioned the due process clause and "fundamental unfairness" in his court of appeals reply brief, he did so in the context of discussing counsel's alleged ineffectiveness and the request for a new trial in the interest of justice. (Doc. 10 Ex. E at 6-8.) The Wisconsin Court of Appeals did not interpret these comments as a due process claim and addressed only the ineffective-assistance-of-counsel and interest-of-justice arguments. (*See* Doc. 10 Ex. F.) Thus, there is no state-court decision on the merits of a due process claim to which this court should defer.

Respondent, in his answer, asserted as a defense that Laguna had procedurally defaulted his due process claim. (Doc. 10, ¶ 8.) However, respondent withdrew the procedural-default defense in his opposition brief. (Doc. 21 at 3 n.3.) As a result, this court will review the claim and such review will be de novo.

A. Due Process

Laguna contends that Wisconsin's bifurcated procedure for handling NGI pleas denied him due process. However, because the court concludes that Wisconsin's bifurcated trial did not violate federal law in general or in Laguna's case in particular, the petition for writ of habeas corpus will be denied.

5

For the involuntary intoxication defense, an intoxicated or drugged condition is a defense if the condition was involuntarily produced and "render[ed] the actor incapable of distinguishing between right and wrong in regard to the alleged criminal act at the time the act [was] committed." Wis. Stat. § 939.42(1). It is available when intoxication was due to prescription medication taken as directed. *State v. Gardner*, 230 Wis. 2d 32, 35, 40, 601 N.W.2d 670, 672, 674 (Ct. App. 1999). The involuntary intoxication defense differs from the voluntary intoxication defense, which requires that the voluntary intoxication negate the existence of the state of mind essential to the crime, Wis. Stat. § 939.42(2); *see Gardner*, 230 Wis. 2d at 37-38.

The insanity or NGI defense relieves an actor from responsibility for criminal conduct "if at the time of such conduct as a result of mental disease or defect the person lacked substantial capacity either to appreciate the wrongfulness of his or her conduct or conform his or her conduct to the requirements of law." Wis. Stat. § 971.15(1). Mental disease or defect excluding responsibility is an affirmative defense that the defendant must establish to a reasonable certainty by the greater weight of the evidence. Wis. Stat. § 971.15(3). In *Gardner*, the Wisconsin Court of Appeals stated that the involuntary intoxication standard, "rather than being congruent with the lack of specific intent standard for voluntary intoxication, is coextensive with the mental responsibility test [of the NGI defense]." 230 Wis. 2d at 38.

As stated above, Wisconsin's bifurcated trial system, codified in Wis. Stat. § 971.165, separates the guilt phase from the NGI phase when a defendant pleads not guilty plus NGI. Wisconsin courts separate the case into two stages with a sequential order of proof before the same jury in a continuous trial. § 971.165(1)(a), (1)(c). The first

6

stage is a determination of guilt; the second stage is a determination of whether the defendant should be excused from criminal responsibility. *See Steele v. State*, 97 Wis. 2d 72, 89-91, 294 N.W.2d 2, 10 (1980); *see also State v. Repp*, 122 Wis. 2d 246, 261, 362 N.W.2d 415, 421 (1985) ("In Wisconsin a finding of insanity is not a finding of an inability to intend. It is essentially a 'moral issue' of 'whether or not there should be criminal responsibility.'"). The jury is informed of the two pleas and that a verdict is to be made as to guilt first before the introduction of evidence on the NGI phase. Wis. Stat. § 971.165(1)(b). Further, the jury is informed that the effect of a verdict of NGI is that in lieu of a criminal sentence the defendant will be committed as appropriate. *See* Wis. Stat. § 971.165(2).

Under Wisconsin caselaw, expert opinion testimony regarding a defendant's capacity to form criminal intent is admissible only in the second phase of the trial. *See Morgan v. Krenke*, 232 F.3d 562, 563 (7th Cir. 2000); *Steele*, 97 Wis. 2d at 98. The Supreme Court of Wisconsin has found expert opinion on the defendant's mental state at the time of the crime to be neither competent, relevant, nor probative regarding the question of intent or guilt. *Steele*, 97 Wis. 2d at 97. The *Steele* holding was premised on the court's "skepticism about the reliability of psychiatric opinion evidence offered to show a causal link between a defendant's mental disease and the capacity to form an intent to commit the crime alleged." *Morgan*, 232 F.3d at 564; *see State v. Flattum*, 122 Wis. 2d 282, 292-93, 361 N.W.2d 705, 711 (1985). Though psychiatric testimony on the ultimate issue of a defendant's capacity to form intent is not admissible in the first phase of the procedure, it *is* admissible during the second phase. *Morgan*, 232 F.3d at 563-64.

However, *Steele* does not render inadmissible all expert opinion evidence regarding a defendant's capacity to form intent. *Flattum*, 122 Wis. 2d at 297. Other evidence, even including psychiatric expert testimony, tending to prove the state of mind of the defendant is not barred in the first phase. *See Flattum*, 122 Wis. 2d at 297, 302; Steele, 97 Wis. 2d at 74 n.1, 82 n.2, 97-98. For instance, psychiatric evidence regarding the capacity to form intent based solely on a defendant's voluntary intoxication is admissible. *Morgan*, 232 F.3d at 564; *Flattum*, 122 Wis. 2d at 288, 293; *State v. Repp*, 122 Wis. 2d 246, 253, 362 N.W.2d 415, 418 (1985). Further, psychiatric testimony as to a defendant's mental health history, stopping short of a conclusion regarding capacity to form intent, is admissible if relevant to prove or disprove capacity to form intent. *Morgan*, 232 F.3d at 564; *Flattum*, 122 Wis. 2d at 288-89, 303.

What is barred is the psychiatrist's testimony in the guilt phase on a defendant's capacity to form the requisite intent when that opinion is based in whole or in part on the defendant's mental condition. *Flattum*, 122 Wis. 2d at 305; *Repp*, 122 Wis. 2d at 253-56. Thus, a psychiatrist's opinion regarding the defendant's capacity to form intent based on both intoxication *and* mental health falls under the bar of *Steele*. *Flattum*, 122 Wis. 2d at 284; *State v. Repp*, 122 Wis. 2d 246, 249, 362 N.W.2d 415, 416 (1985). Exclusion of the psychiatrist's testimony was upheld in *Flattum* because his opinion regarding the defendant's capacity to form intent was based on the defendant's voluntary intoxication plus his mental health history. *Morgan*, 232 F.3d at 564; *Flattum*, 122 Wis. 2d at 286, 288. The defendant did not seek admission of any psychiatrist testimony on mental health history or intoxication alone; instead, he sought admission of an opinion on whether a

8

person with the defendant's voluntary intoxication plus mental health could have formed the specific intent to commit murder. *Flattum*, 122 Wis. 2d at 286, 307.

Laguna claims that the bifurcated trial system denied him the right to present a complete defense. Initially, Laguna pled not guilty based on involuntary intoxication and NGI, but he withdrew the NGI plea because his attorney believed Wisconsin law prohibited psychiatric testimony during the guilt phase of the trial and that he could not maintain both defenses. Laguna says he intended to present a defense similar to *Flattum*: that he did not have the capacity to form intent based on his mental health history combined with his involuntary intoxication from medications. Plus, he intended to maintain the NGI defense. Laguna contends that due to Wisconsin's bifurcated system he was unable to use this strategy, violating his due process right to present a defense.

However, Laguna was not denied due process for three reasons. First, Wisconsin's exclusion of most psychiatric evidence during the guilt phase of a bifurcated trial has been found to comport with due process. *Morgan*, 232 F.3d at 569. During a criminal trial, an accused's due process right is essentially the right to a fair opportunity to defend himself. *Morgan*, 232 F.3d at 566 (citing *Chambers v. Mississippi*, 410 U.S. 284, 302-03, 93 S. Ct. 1038 (1973)). However, a defendant does not have an unfettered right to present evidence, even if relevant. *Id*. at 567 (citing *Montana v. Egelhoff*, 518 U.S. 37, 42, 116 S. Ct. 2013 (1996)). Further, it is normally within the power of the State to regulate procedures by which its laws are carried out. *Id.* Adjustment of the doctrines of intent and insanity are generally within the province of the state. *Id.* (citing *Egelhoff*, 518 U.S. at 56). Therefore, Wisconsin has the power to determine the procedure by which intent and insanity will be determined in state criminal proceedings.

9

In his brief, Laguna relies on *Muench v. Israel,* 715 R. 2d 1124 (7th Cir 1983), and *Morgan*. However, both of those Seventh Circuit decisions denied habeas corpus relief and ruled that Wisconsin's bifurcated system did not deprive the petitioner of the right to due process. The Seventh Circuit found that "it is not an unreasonable application of United States Supreme Court precedent to conclude that Wisconsin can exclude psychiatric testimony as irrelevant in the first stage of the trial." *Morgan*, 232 F.3d at 569. Moreover, the Supreme Court of Wisconsin has indicated that psychiatric opinion evidence regarding an intoxicant's effect on existing mental disorders, i.e., opinions based on a combination of intoxication and mental condition that are excluded from phase one, are permitted in phase two. *Repp*, 122 Wis. 2d at 259-60. The evidence can be admitted, but in phase two rather than phase one—a procedural order that should be within the state's power.

Second, Laguna appears to be wrong about *Flattum* and *Steele* preventing his desired dual defense, or at least most of it. This court is not convinced that Laguna was unable to maintain his NGI defense along with an involuntary intoxication defense. As highlighted in *Flattum*, Wisconsin permits psychiatric evidence regarding the capacity to form intent based solely on defendant's intoxication. *Flattum*, 122 Wis. 2d at 288. *Flattum's* facts concerned only voluntary intoxication. The court expressly stated that it was not addressing whether an expert on the effects of intoxication may opine in the guilt phase that a defendant's *involuntary* intoxication rendered him incapable of distinguishing between right and wrong at the time the act was committed, as the question was not presented by the facts. *Flattum*, 122 Wis. 2d at 288 n. 3. But presumably evidence regarding involuntary intoxication would not be subject to a stiffer admission standard than

10

evidence of voluntary intoxication. Therefore, Laguna should have been able to present evidence showing, at the least, that the medications he was on rendered him unable to form intent.

Further, psychiatric testimony regarding mental health history that stopped short of a conclusion regarding a capacity to form intent should have been permitted. *Morgan*, 232 F.3d at 564. Therefore, Laguna may have been allowed to present psychiatric testimony as to his mental health history in the first stage, as long as the expert did not testify as to the ultimate issue of capacity to form intent. Thus, *Steele* and *Flattum* would bar only a portion of evidence in a case such as Laguna's. Laguna has failed to persuade the court that such a partial bar would have prohibited him from defending the case.

Moreover, it is unclear whether the *Steele* and *Flattum* bar, which prohibits psychiatric testimony as to intent, apply to a trial with an involuntary intoxication defense that involves not intent but ability to distinguish right from wrong. Unlike the voluntary intoxication defense discussed in *Flattum*, the involuntary intoxication defense is not based on lack of intent but rather on the same or greatly similar test as the NGI determination. In *Gardner*, the Wisconsin Court of Appeals stated that when the issue is not lack of capacity to form specific intent (such as that in a voluntary intoxication defense) but rather the ability to distinguish right from wrong (for the involuntary intoxication defense) *Steele* and *Flattum*'s limitations are inapposite. 230 Wis. 2d at 39. Therefore, the evidence might have been admissible.

But all of this discussion of "should have," "might" and "would have" highlights the third, and very serious, problem with Laguna's argument. Wisconsin's bifurcated process did not violate Laguna's due process rights because he chose not to proceed through it.

11

Laguna abandoned the two-stage trial; thus, the bifurcated system did not prevent Laguna from pursuing both defenses. Instead, his own decision prevented him from doing so. Laguna's counsel during the postconviction motion hearing admitted that Laguna's trial attorney may have misunderstood that Laguna could present both defenses. (Doc. 10, Ex. B. at 12.)

And whether the trial attorney was right or wrong is not the issue here. Whether evidence should have been admitted under state procedural law is a matter for state courts, not federal courts. *Morgan*, 2332 F.3d at 567. "[E]ven if there had been an error of Wisconsin law regarding the admission of evidence, it is not [a federal court's] role to correct it" unless the error rises to a constitutional violation. *Id.*

In Laguna's case, the trial court did not exclude mental health evidence from the one-stage trial. In a postconviction hearing the trial court highlighted that Laguna was allowed to present all of his evidence on involuntary intoxication and his inability to distinguish right from wrong. (Doc. 10, Ex. B at 32-33.) Notwithstanding that all of the psychiatric evidence he presented was admitted, Laguna contends that the court was unable to answer the question posed by the jury because Laguna did not maintain his NGI plea—had Laguna maintained his NGI plea, the court could have answered that Laguna would be committed to a mental health facility. But again, the choice of abandoning the NGI phase was Laguna's and counsel's. Laguna's argument here is based on speculation as to what the trial court might or might not have admitted if he had not abandoned the second phase. This court can rule only on what actually happened, not what might have happened had Laguna made a different choice.

B.  Interest of Justice

As the second issue in his brief, Laguna contends that it is not in the interest of justice for Wisconsin to have a categorical rule prohibiting the defendant from introducing potentially relevant evidence in the guilt phase, especially evidence that certain medications are now known to cause profound mental defects. (*See* Doc. 17 at 4.) This claim, too, fails for several reasons.

First and foremost, no federal issue is involved. This court cannot grant a writ of habeas corpus in the interest of justice, but only upon "violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Laguna fails to point to any violation of federal law or a federal right to the overturning of a conviction based on the interests of justice. His brief to the Wisconsin Court of Appeals raising an interest-of-justice issue cited only state law.

In addition, problems similar to those mentioned above apply to the interest-of-justice argument, too. Laguna has not established that any categorical rule prohibiting admission of relevant evidence in phase one exists. Evidence regarding the effects of medication appears to be admissible, even in the guilt phase. That Wisconsin courts have deemed expert testimony as to the ultimate issue of criminal intent to be irrelevant does not mean testimony regarding possible effects of medications is barred. Laguna *was* allowed to introduce evidence on the effects of the medications he was taking and his mental condition. In his brief Laguna admits that two psychiatrists testified as to "the regimen of powerful medications Mr. Laguna was prescribed, the side effects of which were not totally known at the time." (Doc. 17 at 1.) Further, he admits that "[b]oth psychiatrists testified that the medications prescribed by Nurse Practitioner Michelle Harma

13

were also inappropriate for Mr. Laguna, due to the fact that such medications could seriously exacerbate the symptoms of the mental illness and lead to psychotic behavior in the patient." (Doc. 17 at 1-2.) And Laguna ultimately was not affected by the bifurcated procedure that he challenges. He chose to abandon it.

## CONCLUSION

Consequently,

IT IS ORDERED that Laguna's petition for a writ of habeas corpus is denied.

Dated at Milwaukee, Wisconsin, this 11th day of June, 2014.

> BY THE COURT
>
> /s/ C.N. Clevert, Jr.
> C.N. CLEVERT, JR.
> U.S. DISTRICT JUDGE